THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:18-cv-00078-MR-DLH

| | |
|---|---|
| HIGH COUNTRY DEALERSHIPS, INC., d/b/a HIGH COUNTRY POLARIS & GEM CARS, | ) ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) **O R D E R** |
| POLARIS SALES, INC., | ) ) |
| Defendant. | ) ) ) |

**THIS MATTER** is before the Court on the Defendant's Motion to Dismiss and Compel Arbitration. [Doc. 6]. Plaintiff responded to this motion and the Defendant replied. [Docs. 17, 20].

## I.  FACTUAL AND PROCEDURAL BACKGROUND

In April 2016, Plaintiff High Country Dealerships, Inc., ("High Country") and Defendant Polaris Sales, Inc., ("Polaris") entered into a Dealer Agreement ("Agreement") whereby Polaris authorized High Country ("Dealer") to deal in certain Polaris products. [Doc. 8-1 at 27]. Polaris is a division of Polaris Industries, Inc., which manufactures a variety of all-terrain vehicles (ATVs), snowmobiles, and watercraft. [Doc. 7 at 2]. The Polaris

vehicles included in the Agreement were Polaris' GEM electric cars, ATVs, BRUTUS UTVs, and RANGER/RZRs. [Doc. 8-1 at 27]. Section 13(d) of the Agreement provides that, "[t]his agreement may be terminated by Dealer at any time by giving Polaris sixty (60) days' written notice of such termination." [Doc. 8-1 at 15]. The Agreement also includes an arbitration agreement. Section 19 provides, in part:

> a. <u>Place of Arbitration and Applicable Rules</u>. All disputes, controversies, and claims arising out of, or in connection with, the execution, interpretation, performance, nonperformance, or breach of this Agreement (including without limitation the validity, scope, enforceability, and voidability under any statute, regulation, ordinance, or ruling), or termination or non-renewal of this Agreement, or of any provision of this Agreement (including without limitation this arbitration provision, the arbitrability of any issue, and the jurisdiction of the arbitrator), or arising out of or in connection with any claimed duty, right, or remedy (whether arising under this Agreement or any statute, regulation, ordinance, or other rule of law or otherwise) relating to any of the foregoing, will be solely and finally settled by arbitration in Minneapolis, Minnesota, in accordance with the United States Arbitration Act (9 U.S.C. § 1 et. seq.), and the rules of the American Arbitration Association ("AAA") relating to commercial arbitration….

[Doc. 8-1 at 21]. Finally, Section 20(l) of the Agreement provides, "[t]he interpretation of this Agreement will be governed by the laws of the State of Minnesota, without regard to its choice of law rules." [Doc. 8-1 at 25].

On February 16, 2017, High Country sent Polaris a notice in which High Country "advised that effective immediately we are forced to terminate the Brands of: GEM ELECTRIC CARS and BRUTUS do [*sic*] to the unjustified restrictions and interference into our business by your captive lender, Polaris Acceptance." [Doc. 1-1 at 12]. On March 14, 2017, High Country sent another notice to Polaris advising of its "decision to terminate the Polaris ORV line effective March 31, 2017." [Id. at 13]. On April 13, 2017, High Country sent Polaris a letter verifying, "pursuant to N.C. Gen. Stat. § 20-305(6)[1] and the Terms and Provisions of the Dealer Agreement" "that Polaris [ ] and High Country [ ] have agreed not to continue dealer's Polaris, GEM and Brutus Deal Sales and Service Agreements…." [Id. at 14]. In this letter, High Country also sets forth what it believes Polaris' inventory repurchase obligations are under N.C.G.S. § 20-305(6)(d) with respect to the terminated lines. [Doc. 1-1 at 14-15]. On May 15, 2017, High Country sent Polaris a nearly identical letter regarding the same terminated lines, but this time outlining Polaris' purported repurchase obligations under "N.C. Gen. Stat. § 66-184(a)(b) (d) (e).[2]" [Doc. 1-1 at 18-19].

---

[1] Section 20-305 of the North Carolina General Statutes regulates the conduct of manufacturers and distributors of motor vehicles relative to the dealers of those motor vehicles.

[2] Section 66-184 sets forth the terms under which a supplier of farm machinery must repurchase inventory previously purchased by a dealer from the supplier.

On February 22, 2018, High Country filed a Complaint against Polaris in the Superior Court of Avery County, North Carolina, alleging that Polaris has failed and refused to repurchase inventory supplied by Polaris and failed to compensate or reimburse High Country for various expenses, all as required by the North Carolina General Statutes. [Doc. 1-1 at ¶¶ 22, 23]. In short, High Country contends that Polaris' failures constitute a breach of the Agreement with High Country and of N.C.G.S. §§ 20-305 et seq. and §§ 66-180 et seq. [Doc. 1-1 at ¶¶ 35, 37]. High Country further contends that the terms of these provisions may not be waived by an agreement for the application of other law, which the parties purported to do here by virtue of the Minnesota choice of law clause.

On March 29, 2018, Defendant filed a Notice of Removal with this Court, on the ground that this Court has diversity jurisdiction over this action. [Doc. 1 at ¶ 3]. On April 5, 2018, without answering the Complaint, Defendant filed the instant motion, seeking an order compelling arbitration and dismissing Plaintiff's Complaint or, in the alternative, staying the proceedings pending arbitration. [Docs. 6 & 7 at 12, n. 7]. On April 30, 2018, Plaintiff responded to Defendant's motion, conceding that the Dealer Agreement "mandates arbitration in Minnesota," but contends, without citation to any authority, that the Agreement is a "contract of adhesion" that

4

"violates North Carolina public policy and statutes" and is, therefore, unenforceable. [Doc. 17 at 1]. Plaintiff argues that because the Agreement "contains a choice of law provision invoking Minnesota law," "it is difficult to conceive how an arbitrator would decide the case under Minnesota law when North Carolina law clearly applies." [Doc. 17 at 4, 5]. Plaintiff, however, "would not oppose the stay of these proceedings to allow for arbitration of what amount is owed to Plaintiff under [North Carolina statutory law]." [Doc. 17 at 5]. On May 4, 2018, Defendant replied thereto. [Doc. 20].

Having been fully briefed by the parties, these matters are now ripe for disposition.

## II. DISCUSSION

The parties agree that the Agreement contains a mandatory arbitration provision. [Doc. 7; Doc. 17 at 1]. It is further undisputed that no arbitration has taken place. Accordingly, the threshold issues are whether this Court should compel arbitration and whether the Court should either stay the proceedings or dismiss the Complaint.

The Federal Arbitration Act ("FAA") governs the resolution of private disputes through arbitration. 9 U.S.C. § 1 et seq. Where a valid arbitration agreement exists and the issues presented fall within its purview, a district court has no choice but to compel arbitration. Adkins v. Labor Ready, Inc.,

303 F.3d 496, 500 (4th Cir. 2002). A litigant may compel arbitration under the FAA if he can demonstrate: (1) the existence of a dispute between the parties; (2) a written agreement that contains an arbitration provision which purports to cover the dispute; (3) the relationship of the transaction to interstate or foreign commerce; and (4) the failure, neglect or refusal of the other party to arbitrate the dispute. Id. at 500-01.

Here, it is undisputed that all four elements are met. First, the existence of a dispute has been demonstrated by Plaintiff's allegations of Defendant's breach of the Agreement and related failure to comply with North Carolina statutory law. Second, the Agreement contains an arbitration provision that purports to cover the dispute. Third, the transaction relates to interstate commerce in that the Defendant Polaris, a Minnesota corporation, and Plaintiff High Country, a North Carolina corporation, entered into a contract whereby Polaris would sell certain of its products to High Country for resale in North Carolina. Finally, High Country has failed, neglected to, or refused to arbitrate. As such, the Court must compel arbitration.

High Country's arguments to the contrary are uncompelling. High Country argues that, because the Agreement contains a Minnesota choice of law clause, a Minnesota arbitrator could not "decide the case under Minnesota law when North Carolina law clearly applies." [Doc. 17 at 5].

6

Whether the Minnesota choice of law clause, however, supplants North Carolina statutory law under the circumstances of this case, can and should properly be decided by the arbitrator. See Doc. 8-1 at 21, ¶ 19(a) ("All disputes … arising out of, or in connection with … this Agreement, or of any provision of this Agreement (including without limitation this arbitration provision, the arbitrability of any issue, and the jurisdiction of the arbitrator), or arising out of or in connection with any claimed duty, right, or remedy (whether arising under this Agreement or any statute, regulation, ordinance, or other rule of law or otherwise) relating to any of the foregoing, will be solely and finally settled by arbitration."); see also Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991) ("[B]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial forum.") (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628 (1985)). Further, the Agreement also specifically provides:

> If any provision of this Agreement contravenes or is prohibited by the laws or regulations of any state or other jurisdiction wherein this Agreement is to be performed …, such provision will be deemed to be modified only to the extent necessary to conform to such laws or regulations, and all other terms and provisions of this Agreement will remain in full force and effect.

7

[Doc. 8-1 at 25]. As such, should the arbitrator find that North Carolina law applies to the parties' dispute, the remainder of the Agreement, including the arbitration provision, remains intact.

Having concluded that it must compel the parties to arbitrate, the Court will grant a stay of this case until "arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3.

**ORDER**

**IT IS, THEREFORE, ORDERED** that the Defendant's Motion to Dismiss and Compel Arbitration [Doc. 6] is **GRANTED IN PART** and **DENIED IN PART**. Specifically, the Defendant's Motion is **GRANTED** insofar as the parties are hereby ordered to arbitrate, and **DENIED** insofar as the case is not dismissed, but rather stayed pending arbitration in accordance with the terms of the Dealer Agreement. The Plaintiff and Defendant are hereby **ORDERED** to submit all claims in this litigation to arbitration pursuant to the terms of their arbitration agreement. The Court directs the parties that no later than **September 4, 2018**, they shall confer and agree upon an arbitrator and date(s) of arbitration. The Court further directs that such arbitration shall be completed no later than **January 31, 2019**.

**IT IS SO ORDERED.**

Signed: July 30, 2018

Martin Reidinger
United States District Judge